UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNIVERSAL UNDERWRITERS INSURANCE
COMPANY, etc.,

      Plaintiff,

      v.                            No.3:04-cv-1216-J-12MMH

ABE'S WRECKER SERVICE, INC., etc.,
et al.,

      Defendants.

---

## O R D E R

This cause is before the Court on the Motion for Partial Summary Judgment Regarding Coverage Part 980 (Doc.60), filed by Defendant Sandra Vera, Personal Representative of the Estate of William H. Bengoa-Torres, a/k/a William H. Bengoa (Defendant Vera or Estate) on February 13, 2006.  Co-Defendants Maria Teresa Abella, Personal Representative of the Estate of Paola A. Abella (Defendant Abella or Estate), Abe's Wrecker Service, Inc. (Abe's), and James T. Scheider (Defendant Scheider) adopted Defendant Vera's motion for partial summary judgment (Docs. 90 and 93).  The Plaintiff, Universal Underwriters Insurance Company (Plaintiff or Universal), filed its opposition to Defendant Vera's motion and cross-motion for summary judgment (Doc.69) on March 7, 2006.  On March 17, 2006, Defendant Vera filed a response to Plaintiff's cross-motion for summary judgment (Doc.72), which Defendants Abe's and Scheider adopted (Doc.76).  Defendant Abella also filed a response to Plaintiff's cross-motion for summary judgment (Doc.90), on March 31,

2006. The parties have filed voluminous documents in support of their respective positions (Docs. 62, 70-71, 78-89, 91-92, and 98). The Court also permitted the Plaintiff to supplement the record with the material contained in Doc.96. See Doc. 105. The Court heard oral argument on the cross-motions for summary judgment on July 19, 2006.

The contractual interpretation issues before the court on the cross-motions for summary judgment arise as the result of an accident that occurred on March 5, 2004 (the accident). Defendant Scheider, an employee of Abe's, driving a truck leased by Abe's, was returning to Jacksonville after delivering a load of steel in Ocala, when he was involved in a motor vehicle accident on a public highway resulting in the deaths of Paola A. Abella and William H. Bengoa. See Amended Complaint, Doc. 7, at p. 8. Because the claims of the Estates exceeded the coverage provided by its automobile liability policy with Hannover Insurance Company, Abe's notified Universal of the Estates' claims,[1] asserting that coverage for those claims is provided by a policy of insurance issued by Universal to Abe's and B&S Body Shop, Inc. (the Policy). Universal filed this action seeking a declaratory judgment that no coverage exists under the Policy in the circumstances of this case, because the Policy was never intended to provide coverage for general automotive risks on public highways and because Abe's

---

[1]     The claims of Defendants Abella and Vera against Abe's as a result of the accident have been reduced to final judgment in the state court in the amounts of $1,400,000.00 and $1,750,000.00 respectively. See Defendant Abella's response to Plaintiff's cross-motion for summary judgment, Doc. 90, Exhs. A and B. The Plaintiff did not defend or otherwise participate in those state court actions maintaining that Abe's has no coverage under the Policy. See Amended Complaint, Doc.7 at p. 9. Abe's Hannover automobile liability policy provided $1,000,000.00 in coverage. Id.

and Defendant Scheider are not covered under any arguably applicable coverage part. See, Amended Complaint, Doc. 7.  The Defendants have asserted various affirmative defenses and cross-claims, including that coverage exists under the Policy for the accident, that Universal should be estopped from denying coverage because it did not make clear to Abe's its coverage position regarding the situation presented by the accident, and that the Policy should be reformed to conform with the parties' intentions regarding coverage.  See, Defendants' Answers, Docs. 10-12.

The issues for the Court's determination on the cross-motions for summary judgment concern the interpretation of the Policy language, that is, whether the Policy as written provides coverage for the accident and for Abe's and Defendant Scheider. The parties' positions may be briefly summarized.  The Defendants assert 1) that Abe's is a named insured under both the Garage Operations and Auto Hazard (Part 500) and the Umbrella (Part 980) coverages of the Policy which provide coverage for the accident, 2) that no exclusion applies that would permit Universal to deny coverage under the circumstances of the accident, and 3) that the Umbrella coverage in the Policy provides coverage in excess of that provided by Abe's' Hannover automobile liability policy.  Universal contends 1) that the Estates' losses for the accident are not covered under the Policy because it provides no general automobile coverage on public highways,  2) that the Umbrella coverage provides only coverage in excess of the coverages provided under the Policy or under any other policy listed in the declarations page, which in this case does not include the Abe's' Hannover automobile liability policy, and 3) that Abe's is not a named insured under either the Garage Operations and Auto Hazard (Part 500) or Umbrella (Part 980) coverage parts of the Policy.  For

3

the reasons set forth below, the Court is of the opinion that the Policy does not provide coverage for the accident, and therefore the Court need not address the issue of whether Abe's is a named insured under the Policy.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The purpose of summary judgment is to dispose of unsupported claims or defenses which, as a matter of law, do not raise issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Under applicable Florida law, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." Fla. Stat. § 627.419 (1)(2002). If the insurance policy language is clear and unambiguous, the Court "must interpret it according to its plain meaning, giving effect to the policy as it is written." East Florida Hauling, Inc. v. Lexington Insurance Company, 913 So.2d 673, 676 (Fla. 3d DCA 2005)(citing Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003)). "However, if the language of the policy is susceptible to more than one reasonable interpretation, it is ambiguous, and a court will resolve such ambiguity in favor of the insured." Id. (citing Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000)).

Universal issued policy number 227654B for the policy period April 1, 2003, to

April 1, 2004, identifying B&S Body Shop, Inc. and Abe's Wrecker Service Inc. as the

named insureds on the declarations page.[2]  Policy, p. A-1.[3]  Defendant Abella asserts

that the accident is covered under Part 500 of the Policy, concerning Garage

Operations and Auto Hazard (limit $500,000), and all Defendants assert that the

Umbrella coverage in part 980 of the Policy (limit $2,000,000) provides excess

coverage to Abe's Hannover automobile liability coverage which provided coverage for

---

[2]      The Court notes that the parties vigorously contest whether Abe's is a
named insured under the allegedly applicable coverage parts. Abe's is listed as the
second named insured on page 1-A of the Policy. However, that page of the Policy
also indicates that the "insurance applies only to those insureds ... designated for each
coverage..." Abe's is not listed thereafter as a named insured under any coverage part
of the Policy. See Policy, at pp 1-A-1-L. Nevertheless, Universal issued certificates of
insurance indicating that Abe's was covered under both the Garage Operations and
Auto Hazard and Umbrella coverage parts of the Policy. See, e.g., Doc.72, Exh.B.
Universal also paid at least one claim against Abe's under the Policy, which involved
damage to a customer auto being towed by one of Abe's' wreckers. See, e.g.,
Kurlander Depo., Doc. 71, at pp. 107-08, 196-98; Wilcox Depo., Doc.86, at pp. 116-17,
205 and 209. The agent who sold the Universal policies to B&S Body Shop, Inc. and
Abe's, Corey Kurlander, indicated that although Abe's was not listed as a named
insured under any coverage part, the parties intended the Policy to provide coverage to
Abe's for damage to customer's autos while on Abe's premises under Part 300 of the
Policy. Kurlander Depo., Doc. 71, at pp. 82-83, 148-49, and 197-98. Abe's also paid
some of the Policy premiums. See, e.g., Anderson Depo., Doc.85, at pp. 68-69 and
Exh. 3. As stated above, because the Court finds that the unambiguous language of
the Policy does not provide coverage for the March 5, 2004, accident, the Court need
not attempt to resolve the issue of which, if any, coverages were provided to Abe's
under the Policy.

[3]      The Policy at issue has been submitted to the Court as part of several
different documents and the Court has utilized the copy of the Policy attached as
Exhibit A to Doc.11, the Answer, Affirmative Defenses and Counter-Claim of
Defendants Abe's and Scheider. Pages numbered "1-letter" refer to the declarations
pages of the Policy. The Policy is the second renewal of the policy issued by Universal
to B&S Body Shop, Inc. and Abe's effective April 1, 2001. Kurlander Depo., Doc. 71, at
p. 38.

5

the accident.

As an initial matter, both Parts 500 and 980 exclude coverage for "towing and wrecker operations and services." Policy at pp. 1-I, 1-K, and Endorsement 367. The record is undisputed that Defendant Scheider had hauled a load of steel from Jacksonville to Ocala and was on his way back to Jacksonville after delivering the steel when he was involved in the fatal accident and that he was not involved in a towing or wrecker activity. See, e.g., James T. Scheider Depo, Doc. 78 at pp.12-13; James T. Scheider Depo, Doc. 80, at pp. 27-43; and James T. Scheider Depo., Doc. 83, at pp 44-46. Joseph Alan Wilcox, the Universal underwriter who drafted the exclusion language, testified that "towing" meant hooking a vehicle to the tow truck in order to tow it and that "wrecker" involved hauling off a vehicle after a wreck. Wilcox Depo., Doc.86, at pp. 159-160. The Court finds that the subject accident did not involve any towing or wrecker operations or services as those terms, which are not specifically defined in the Policy, would be commonly and reasonably understood. As a result, the Court finds that the towing and wrecker exclusion does not apply to the facts in the instant case and therefore provides no basis for the finding of coverage or lack thereof.

The Court now analyzes the two parts of the Policy which the Defendants claim provide coverage for the accident: Part 500, Garage Operations and Auto Hazard, and Part 980, Umbrella coverage.

Part 500, Garage Operations and Auto Hazard, provides in relevant part:

> **INSURING AGREEMENT** - WE will pay all sums the
> INSURED legally must pay as DAMAGES (including punitive
> DAMAGES where insurable by law) because of INJURY to
> which this insurance applies caused by any OCCURRENCE

6

arising out of GARAGE OPERATIONS or AUTO HAZARD.[4]

Policy at p. 39.

> "GARAGE OPERATIONS" means the ownership,
> maintenance or use **of that portion of any premises** where
> YOU conduct YOUR AUTO business and all other
> operations necessary or incidental thereto.

Policy at p. 40 (bold added).

Endorsement 97 of the Policy changes the definition of Auto Hazard to read:

"'AUTO HAZARD' means the maintenance or use of a CUSTOMER'S AUTO." Policy at

p. 117.  Endorsement 97 also replaces exclusion (i) with an exclusion for:

> INJURY ... arising out of the ownership, use, loading or
> unloading of any:
>> (1) AUTO:
>>> (i) owned by, leased or rented to any
>> INSURED; ...
>>> (iv) being used as a HAULAWAY, ... or
>> for carrying property for a charge....

<u>Id</u>.

The definition of Garage Operations clearly provides that such operations occur

on the premises of the insured and the Court finds that it would be unreasonable to

interpret that definition to extend coverage to the accident which occurred on a public

highway.  Moreover, Endorsement 97 makes clear that Auto Hazard coverage is

intended to apply to customer automobiles only and not to any use of an auto owned by

the insured being used to carry property for a charge, which is precisely the situation

---

[4]     When quoting the Policy, the Court utilizes the capitalization contained in
the Policy.  Words in all-caps designate words specifically defined in the Policy.

presented by the accident.  Defendant Scheider was hauling steel for delivery to an

Abe's customer in Ocala.  The Court simply cannot find that the Garage Operations and

Auto Hazard coverage in part 500 of the Policy was intended to cover the accident.

The unambiguous language clearly excludes coverage for such accident involving an

insured's auto on a public highway.[5]

Part 980, the Umbrella coverage, provides in relevant part:

> INSURING AGREEMENT - WE will pay for LOSS, subject to
> the terms and conditions of this Coverage Part, in excess of:
> (a) coverage provided in any UNDERLYING
> INSURANCE...

Policy at p. 75.

Endorsement 311 specifies that:

> THIS INSURANCE DOES NOT APPLY TO:
> *INJURY ... ARISING OUT OF THE
> OWNERSHIP, MAINTENANCE, USE,
> LOADING OR UNLOADING OF ANY *AUTO,
> EXCEPT AS COVERED BY *UNDERLYING
> *INSURANCE.[6]

"'UNDERLYING INSURANCE' means the coverage and limits of liability afforded

to YOU by the underlying policy(s) or insurance scheduled in the declarations for the

---

[5]      Basic Auto coverage was available as Part 900 of this "cafeteria style"
policy, but was not purchased by Abe's or B&S Body Shop, Inc., as reflected on the
declarations pages of the Policy.  See Policy at pp. 1-A-1-L and 3.  Susie Anderson, the
Abe's employee most knowledgeable and responsible for Abe's insurance matters,
testified that Abe's always carried automobile insurance for its fleet of trucks with a
company other than Universal.  See, e.g., Anderson Depo., Doc. 85 at pp. 55-58, 92
and 143-44.

[6]      This provision of the Policy is written in all-caps and the asterisks indicate
terms defined in the coverage part to which the endorsement applies.

Coverage Part...."  Policy at p. 78.

The declarations page for Part 980 provides:

> UNDERLYING INSURANCE:
>     PART 2 (EMPLOYER'S LIABILITY
>     INSURANCE) OF ANY WORKERS'
>     COMPENSATION ISSUED BY US TO THE
>     INSURED SHOWN FOR THIS COVERAGE
>     PART; ALL OTHER COVERAGE PARTS OF
>     THIS POLICY PROVIDING LIABILITY
>     INSURANCE FOR THE INSUREDS NAMED
>     ON THIS COVERAGE PART EXCEPT
>     COVERAGE PART 530, PART 550, AND
>     COVERAGE PART 970.

Policy at p. 1-L.

The Court finds that the plain and unambiguous meaning of these relevant sections of the Policy is that the Umbrella coverage provides excess coverage for the other coverages provided in the underlying Universal policy, and for any coverages listed on the declarations page for Part 980.  There is no dispute that the declarations for the Umbrella Coverage (Part 980) does not list Abe's' Hannover automobile insurance policy.  The Court is of the opinion that it would be unreasonable to interpret the term "underlying insurance" as defined in the Policy to include any insurance policy whatsoever owned by the insured, as advocated by the Defendants.  The Court has previously found that the Garage Operations and Auto Hazard coverage in Part 500 does not provide coverage for the accident.  The Defendants have not argued that any other coverage part of the Policy would provide coverage for the accident.  As a result, the Court finds that the Umbrella coverage under the Policy does not provide excess coverage for the accident.

Upon review of the matter, it is

9

**ORDERED AND ADJUDGED**:

1)    That the Motion for Partial Summary Judgment Regarding Coverage Part 980 (Doc.60) is denied;

2)    That the Plaintiff's cross-motion for summary judgment (Doc.69) is granted as set forth herein; and

3)    That the Court will conduct a status conference on Wednesday, November 1, 2006, at 10:00 a.m. in Courtroom 12A to discuss the resolution of any remaining issues, such as estoppel and reformation, raised by the Defendants in their responsive pleadings (Docs.10-12) to the Amended Complaint (Doc.7), but not resolved in the rulings on the motions for summary judgment.

**DONE and ORDERED** this 20TH day of September 2006.


*Howell W. Melton*

Senior United States District Judge


C:

Counsel of Record

10