UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


UNIVERSAL UNDERWRITERS
INSURANCE COMPANY, a Kansas
corporation,
        Plaintiff,

                                     CASE NO. 3:04-CV-1216-J-12TEM


ABE'S WRECKER SERVICE, INC., a Florida
corporation, JAMES T. SCHEIDER, an
individual, MARIA TERESA ABELLA, personal
representative of the Estate of Paola A. Abella, and
SANDRA VERA, personal representative of
the Estate of William H. Bengoa-Torres, a/k/a
William H. Bengoa,

        Defendants.
_____/

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

INTRODUCTION

    This cause came before the Court for a non-jury trial on January 9, 2008.

On March 26, 2008, the Court heard final arguments, and now makes these

findings of fact and conclusions of law.

    Plaintiff, Universal Underwriters Insurance Company (Universal), brought

this declaratory judgment action to determine the existence of insurance

coverage for an accident that occurred on March 5, 2004 (the accident).  On that

date, Defendant James T. Scheider, an employee of Defendant Abe's Wrecker

Service, Inc. (Abe's Wrecker), driving a vehicle[1] leased by Abe's Wrecker, was returning to Jacksonville, Florida, after delivering a load of steel in Ocala, Florida, when he was involved in a motor vehicle accident on a public highway resulting in the deaths of Paola A. Abella and William H. Bengoa. See Amended Complaint, Doc. 7, at p. 8; and Defendants' Answers, Affirmative Defenses and Counterclaim Docs. 10-12. The Defendants assert that coverage for the claims of the decedents' estates (represented by Defendants Maria Teresa Abella and Sandra Vera, respectively as personal representatives) is provided by a policy of insurance issued by Universal to B&S Body Shop, Inc. and Abe's Wrecker (the Universal Policy).[2] See Docs. 10-12.

Universal filed this action seeking a declaratory judgment that no coverage exists under the Universal Policy for the accident, because the Universal Policy was never intended to provide any coverage for general automotive risks on public highways and because Abe's Wrecker and its employee, James T. Scheider, are not covered under any arguably applicable coverage part. See Doc. 7. The Defendants asserted various affirmative

---

[1]

Throughout the proceedings in this case, the parties and the Court have referred to vehicles leased or owned by Abe's Wrecker and used in its business interchangeably as its vehicles, tow trucks, trucks, or wreckers.

[2]

The claims of Defendants Abella and Vera against Abe's Wrecker as a result of the accident have been reduced to final judgment in the state court in the amounts of $1,400,000.00 and $1,750,000.00 respectively. See Doc. 90, Exhs. A and B.

defenses and counterclaims, including that coverage exists under the Universal Policy for the accident, that Universal should be estopped from denying coverage because it did not make clear to Abe's Wrecker its coverage position regarding the situation presented by the accident, and that the Universal Policy should be reformed to conform with the parties' intentions regarding coverage. See Docs. 10-12.

In ruling on cross-motions for summary judgment, the Court found the Universal Policy as written did not provide coverage for the accident under Garage Operations and Auto Hazard (Part 500) or the Umbrella (Part 980) coverages of the Universal Policy, because it provides no general automobile coverage on public highways, and because the Umbrella coverage provides only coverage in excess of the coverages provided under the Universal Policy or under any other policy listed in the declarations page, which does not include the Abe's Wrecker's Insurance Corporation of Hannover (Hannover) $1,000,000.00 automobile liability policy. See Summary Judgment Order, Doc. 112;[3] and Plaintiff's Trial Exhibit 9. Because the Court found that the Universal Policy did not provide coverage for the accident, it made no finding regarding whether Defendant Abe's Wrecker was covered under the Universal Policy. See Id.

The parties tried before the Court the issues of whether coverage exists

---

[3]

This Order also is available at Universal Underwriters Ins. Co. v. Abe's Wrecker Service, No. 3:04-cv-1216-J-12MMH, 2006 WL 2711839 (M.D. Fla. September 21, 2006).

for the accident under theories of promissory estoppel or reformation, and whether Abe's Wrecker was covered under the Universal Policy.  For the reasons set forth below, the Court determines that Abe's Wrecker is insured under some coverages of the Universal Policy, but that the Universal Policy provides no automobile or umbrella coverage for the accident by virtue of either promissory estoppel or reformation.

FINDINGS OF FACT

Universal first issued the Universal Policy to B&S Body Shop with Abe's Wrecker as a second named insured beginning April 1, 2001.  Plaintiff's Trial Exhibit 1.  The Universal Policy was renewed three times with various changes each year thereafter.  TT at p. 46-48:[4]   and Plaintiff's Trial Exhibits  2, 3, and 4.

Mr. Corey Kurlander has been employed by Universal from 1999 through the date of trial as an account executive, selling and servicing insurance policies for the aftermarket automotive industry.  TT at p. 134.  Ms. Belinda Sue Anderson has been an officer and employee of B&S Body Shop and Abe's Wrecker since prior to 2001 through the date of trial.  TT at p. 62; and Anderson Depo at p. 12.[5]   She was the only individual associated with B&S Body Shop

---

[4]

The Court cites to the Transcript of the Non-Jury Trial held January 9, 2008, as "TT at p. _."

[5]

The Court cites to the Deposition of Abe's Wrecker's corporate

and Abe's Wrecker who handled substantive transactions involving insurance on behalf of those entities.  TT at p. 63.  Ms. Anderson dealt exclusively with Mr. Kurlander in procuring and renewing the Universal Policy.  Anderson Depo. at p. 167.

Mr. Kurlander, without having been solicited, contacted B&S Body Shop regarding insurance coverage, and after meeting with Ms. Anderson, Mr. Kurlander created and forwarded to Ms. Anderson a proposal for coverage directed to B&S Body Shop, titled "Presentation of Solutions to B&S Body Shop." TT at pp.135-136 and 67; and Plaintiff's Trial Exhibit 7.  The proposal does not address automobile insurance and lists no other company's underlying policy for which umbrella coverage was to be provided.  Plaintiff's Trial Exhibit 7.

Mr. Kurlander advised Ms. Anderson that Abe's Wrecker should keep its existing policy of insurance on its tow trucks with State Farm Insurance (State Farm).  TT at p. 68; and Anderson Depo at p. 143.  Ms. Anderson was advised by Mr. Kurlander, and she was aware prior to the placement of the first Universal Policy, that the Universal Policy would not provide automobile coverage for Abe's Wrecker's vehicles.  TT at pp. 69-70; and Anderson Depo. pp. 143, 144, 159, 169, and 181.

Since prior to April 1, 2001, as well as after the inception of the Universal

---

representative, Ms. Anderson, taken January 18, 2006, as "Anderson Depo at p. _."

Policy. Abe's Wrecker had a policy of insurance providing coverage, including

bodily injury, on its tow trucks with State Farm. TT at p. 71; Plaintiff's Trial

Exhibit 5; and Anderson Depo. at p. 143.

After the inception of the Universal Policy, State Farm issued a non-

renewal notice to Abe's Wrecker due to its loss history. TT at p. 72. Ms.

Anderson realized she had to procure coverage for the Abe's Wrecker tow trucks

after non-renewal by State Farm and secured this coverage for the 2002 policy

year with Westport Insurance Company (Westport) through agent Ron Carroll,

an insurance agent retained by Abe's Wrecker to obtain policies of insurance for

Abe's Wrecker's vehicles. TT at p. 73-74; Carroll Depo. at pp. 4-6;[6] and

Plaintiff's Trial Exhibit 8.

The Westport policy provided full automobile liability coverage to Abe's

Wrecker's vehicles during the 2002 policy year for initial policy limits of

$300,000.00. Plaintiff's Trial Exhibit 8. During the 2002 policy year, Ms.

Anderson contacted Mr. Carroll and requested the coverage on Abe's Wrecker's

tow trucks be increased from $300,000.00 to $1,000,000.00, and Abe's Wrecker

paid an additional prorated premium for the increased automobile liability

coverage on its vehicles with Westport. TT at p. 74 and 76; Plaintiff's Trial

Exhibit 8.

---

[6]

The Court cites to the Deposition of Shawn Carroll taken on March 2,
2006, as "Carroll Depo. at p. _."

Ms. Anderson's procuring increased coverage limits for Abe's Wrecker's

tow trucks through Westport belies the Defendants' position that she believed

Abe's Wrecker had either additional automobile coverage or $2,000,000.00

umbrella coverage for the Westport policy through the Universal Policy. There is

no evidence in the record to explain why Ms. Anderson increased the coverage

limits on the Westport policy if she believed she already had $2,000,000.00 of

umbrella coverage under the Universal Policy. Ms. Anderson did not discuss

umbrella coverage with Mr. Carroll when she increased the limits on Abe's

Wrecker's Westport policy. Carroll Depo. at p. 25.

During the renewal process of the Universal Policy, Ms. Anderson and

Mr. Kurlander sometimes discussed whether Universal would consider providing

coverage for Abe's Wrecker's vehicles, and Mr. Kurlander advised her that he

could not provide that coverage and that she would have to maintain her own

automobile insurance. TT at pp. 69-70, and 139-141; and Anderson Depo. at p.

144. Ms. Anderson knew the Universal Policy did not provide automobile

coverage for the tow trucks operated by Abe's Wrecker and that no premium

was being charged accordingly. Id.

From its inception through three renewals, the Universal Policy as written

provided no coverage to B&S Body Shop and/or Abe's Wrecker for vehicles of

either entity operated on public highways. See Doc. 112. The record does not

contain evidence to support the conclusion by a preponderance of the evidence

7

or higher standard, that Ms. Anderson believed that the Universal Policy provided automobile coverage, or umbrella coverage for any of Abe's Wrecker's automobile policies with other companies such as State Farm or Westport.

Ms. Anderson demonstrated her awareness that no vehicle or umbrella coverage existed for Abe's Wrecker under the Universal Policy by requesting that Westport increase its automobile liability limits on the Abe's Wrecker vehicles in 2002, and when she wrote to Universal in 2002 and 2003 requesting they issue certificates of insurance for other coverages, acknowledging that no automobile liability coverage existed for Abe's Wrecker under the Universal Policy.  TT at pp. 77-79; Plaintiff's Trial Exhibits 25 and 26.  Ms. Anderson acknowledged there was no automobile liability or umbrella coverage for Abe's Wrecker under the Universal Policy by maintaining the State Farm policy, then shopping for competitive quotes and obtaining full insurance coverage for Abe's Wrecker vehicles through Westport in 2003, and thereafter through Hannover. Anderson Depo. at pp. 94-95.  Moreover, there is no evidence in the record that Ms. Anderson ever attempted to notify Universal regarding any changes of these purported underlying policies to which the Defendants assert the Universal Policy umbrella coverage applied.

The claims giving rise to this declaratory judgment action arise from the accident on a public highway involving an Abe's Wrecker vehicle.  TT at p. 89. At the time of the accident, Abe's Wrecker had in full force and effect a policy of

insurance covering its vehicles with Hannover with policy limits of $1,000,000.00.
TT at p. 89-90; and Plaintiff's Trial Exhibits 9 and 10.  Hannover retained counsel
to defend Abe's Wrecker for the underlying lawsuits.  TT at p. 94; Anderson
Depo. at pp. 98-99.  Abe's Wrecker demonstrated beneficial reliance upon Mr.
Kurlander's statements that no coverage existed for the Abe's Wrecker vehicles
under the Universal Policy by securing successive policies of insurance providing
automobile liability coverage to Abe's Wrecker with carriers other than Universal.
See, e.g., TT at p. 81; Anderson Depo. pp. 94-95; and Plaintiff's Trial Exhibits 5,
8, 9, and 10.

The Court's finding that Ms. Anderson did not have an understanding that
the Universal Policy provided Abe's Wrecker with coverage for the accident is
supported by the testimony of Mr. Lewis Scheider, the owner and sole
shareholder of B&S Body Shop and Abe's Wrecker.  See TT at p. 108.  Mr.
Scheider executed interrogatories under oath swearing that no other automobile
insurance coverage existed on the Abe's Wrecker vehicles during the relevant
time period (2003-2004) other than the Hannover policy.[7]  TT at pp. 117-119;
and Plaintiff's Trial Exhibit 27.

Abe's Wrecker vehicles were involved in automobile accidents resulting

---

[7]

Mr. Scheider provided this testimony in the case of Jane Bennett v. Abe's
Wrecker Service, Inc. and John R. White, (Fla. 4th Judicial Circuit, Case No.
2003-CA-006469, Division CV-B), which involved bodily injuries arising from an
Abe's Wrecker vehicle accident in June 2003.

in serious personal injury in June 2003 and on March 5, 2004.  Both accidents were reported immediately to Hannover.  TT at pp. 118-119.  Hannover Insurance retained counsel to represent Abe's Wrecker with regard to both accidents.  TT at pp. 94 and 111.

Neither the June 2003, nor the March 5, 2004, accidents were reported to Universal Underwriters until Ms. Anderson forwarded claim information on April 30, 2004.  Anderson Depo. at p. 106.  Ms. Anderson was aware that insurance claims should be submitted to the insurance company which provides coverage for the loss.  Id.  The delay in submitting those claims to Universal suggests that neither Ms. Anderson nor anyone else at Abe's Wrecker believed coverage existed under the Universal Policy for them.[8]  No evidence in the record supports another explanation.

Mr. Kurlander met with Ms. Anderson during the renewal process in March 2004, and Ms. Anderson said nothing to him about the March 5, 2004, automobile accident involving the Abe's Wrecker vehicle.  TT at p. 143.  Rather, Ms. Anderson inquired whether Universal would be interested in quoting coverage for the tow trucks.  Id.  Mr. Kurlander once again told Ms. Anderson Universal would not provide any coverage for Abe's Wrecker's vehicles.  Id.

---

[8]

The testimony of Ms. Stephanie Le, a senior claims adjuster for Universal in April 2004, who was assigned the June 2003 accident and spoke to Ms. Anderson, also supports the conclusion that Ms. Anderson did not believe coverage for that accident or the March 5, 2004, accident was provided under the Universal Policy.  TT at pp.123-124, 126.

The record evidence in this matter indicates Universal's agent, Mr. Kurlander told Ms. Anderson at the inception of the Universal Policy and thereafter, that no automobile liability coverage existed in favor of Abe's Wrecker's vehicles under the Universal Policy. The record demonstrates that Ms. Anderson acted in conformity with such understanding at all times.

There is no record evidence that Abe's Wrecker detrimentally relied upon any representation of Universal that automobile or umbrella coverage existed under the Universal Policy. To the contrary, the record establishes beneficial reliance by Abe's Wrecker in obtaining a series of policies covering their tow trucks precisely because Mr. Kurlander made it clear that there was no coverage for its vehicles under the Universal Policy.

The record does demonstrate some disagreement between Mr. Kurlander and others at Universal, particularly Mr. Wilcox, regarding the payment of claims and the scope of coverage. See, e.g., TT at pp. 155-171, 174. The Court is of the opinion that while such evidence supports the conclusion that Abe's Wrecker was intended to be insured under the Universal Policy, it cannot support a conclusion that Ms. Anderson or Mr. Kurlander contemplated that the Universal Policy would provide automobile or umbrella coverage for an accident on a public highway involving an Abe's Wrecker's vehicle and personal injury and/or death.

As a result of these factual findings, as the Court will explain more fully

11

below, the evidence in this case does not support Defendants' claims of promissory estoppel or reformation.

CONCLUSIONS OF LAW

The Court's ruling on summary judgment that the Universal Policy on its face provided no coverage for the accident as a matter of law resolved Plaintiff's Amended Complaint, and Counts I and II of the Counterclaim of Defendants, Abe's Wrecker and James T. Scheider, in favor of Universal. See Doc. 112. This matter went to trial on the remaining two counts of the Counterclaim and the Affirmative Defenses sounding in promissory estoppel and reformation. See Doc. 10-12.

The Florida Supreme Court has created a narrow circumstance in which promissory estoppel may be invoked to create insurance coverage. Specifically, coverage that does not exist under a policy may only be created through promissory estoppel when necessary to avoid fraud or other injustice. See, Crown Life Insurance Co. v. McBride, 517 So.2d 660, 662 (Fla. 1987).

To prove entitlement to this limited relief, Defendants must prove by clear and convincing evidence that (1) Universal represented to Abe's Wrecker that it would provide coverage required for the loss at issue and it reasonably should have expected Abe's Wrecker not to procure such coverage elsewhere, and (2) Abe's Wrecker relied upon said representation by failing to procure the

coverage at issue elsewhere to its detriment.  See, Crown Life, 517 So. 2d at 662.

> [T]o support a finding of equitable estoppel the facts necessary to constitute it must be shown with certainty and not taken by argument or inference, nor supplied by intendment, but clearly and satisfactorily proved.  This is a significantly higher degree of proof than by the greater weight of the evidence.

Crown Life, 517 at 664 (concurring opinion)(citations omitted).

To obtain reformation of the Universal Policy, Abe's Wrecker must show by clear and convincing evidence that a mutual mistake was made between the parties in the drafting of the insurance policy at issue.  See, Allstate Insurance Company v. Vanater, 297 So.2d 293, 296 (Fla. 1974); USAA Casualty Insurance Company v. Threadgill, 729 So.2d 476, 478 (Fla. 4th DCA 1999).

The mistake necessary to give rise to reformation must be "...mutual and common to both parties to the instrument.  A mistake on one side may be ground for rescinding, but not for reforming, the contract.  When the minds of the parties have not met, there is no contract and hence none to be rectified." Fidelity Phoenix Fire Insurance Company of New York v. Hilliard, 62 So. 585, 586 (Fla. 1913).  The Florida Supreme Court has held there is a "strong presumption arising from [an insurance] policy that it correctly expresses the intention of the parties" and clear and convincing evidence is required to overcome such strong presumption, Niagra Fire Insurance Co. v. Allied Electric Co., 319 So.2d 594,

595 (Fla. 3d DCA), cert dismissed 322 So.2d 925 (Fla. 1975).

The evidentiary standard of clear and convincing evidence in the context of reformation contemplates testimony from a credible witness who testifies to facts that are:

> distinctly remembered and the details thereof
> narrated exactly and in due order and that the
> testimony be clear, direct and weighty and convincing,
> so as to enable you to come to a clear conviction
> without hesitancy of the truth of the precise facts and
> issue.

Aetna Insurance Company v. Paddock, 301 F.2d 807, 811 (5th Cir. 1962). See also, Golden Jewelry Creations v. Lloyds Underwriters, 8 F.3d 760 (11th Cir. 1993), reversed in part on other grounds, 117 F.3d 1328 (11th Cir. 1997).

As discussed above, Defendants presented insufficient proof of any representation supporting the creation of automobile liability coverage or umbrella coverage for the accident in favor of Abe's Wrecker under the Universal Policy. There is  an insufficient basis to find by a preponderance of the evidence, or by the higher standard of clear and convincing evidence required for promissory estoppel or reformation, that Universal acting through Mr. Kurlander, represented to Ms. Anderson acting on behalf of Abe's Wrecker, that Abe's Wrecker had automobile liability or umbrella coverage for the accident of March 5, 2004, or that Ms. Anderson believed that to be the case.

Rather than demonstrate detrimental reliance, the record establishes that Abe's Wrecker beneficially relied upon Mr. Kurlander's statements that no

coverage existed for Abe's Wrecker's vehicles by maintaining various policies providing automobile coverage for the Abe's Wrecker vehicles.  The Defendants have not met their burden of establishing a right to recover under the Universal Policy under the doctrine of promissory estoppel.

Because both Ms. Anderson and Mr. Kurlander understood the Universal Policy did not provide any coverage for Abe's Wrecker's vehicles, reformation of the Universal Policy is not warranted based upon the record in this case.  Any mistakes, mutual or otherwise, regarding coverage under the Universal Policy had nothing to do with automobile liability or umbrella coverage for Abe's Wrecker's vehicles for accidents on public highways involving personal injury and/or death.

Accordingly, it is

ORDERED AND ADJUDGED:

1.     That for the reasons set forth herein and in the Court's Order (Doc. 112), the Court finds that Defendant Abe's Wrecker Service is insured under some coverages provided by the Universal Policy, nevertheless, no automobile or umbrella coverage exists for the accident which is the subject of this case under the Universal Policy as written, nor does such coverage exist under theories of promissory estoppel or reformation;

2.     That the Plaintiff is entitled to judgment in its favor; and

3.     That the Clerk is directed to enter judgment on behalf of Plaintiff

15

and against all Defendants on all counts of the Amended Complaint (Doc. 7) and

Counterclaim (Doc. 11) with costs to be assessed against Defendants according

to law.

DONE AND ORDERED this ___4th_____ day of June 2008.


_Howell W. Melton_
Senior United States District Judge



Copies:      Counsel of Record

16